871 F.2d 401
 130 L.R.R.M. (BNA) 3058, 111 Lab.Cas. P 11,091
 UNITED STATES of America
v.
LOCAL 30, UNITED SLATE, TILE AND COMPOSITION ROOFERS, DAMP
AND WATERPROOF WORKERS ASSOCIATION, Residential Reroofers
Local 30B, United Slate, Tile and Composition Roofers, Damp
and Waterproof Workers Association, Stephen Traitz, Jr.,
Edward P. Hurst, Michael Mangini, Robert Crosley, Michael
Daly, Daniel Cannon, Mark Osborn, Robert Medina, Ernest
Williams, James Nuzzi, Stephen Traitz, III, Joseph Traitz,
Richard Schoenberger.
Appeal of LOCAL 30, UNITED SLATE, TILE AND COMPOSITION
ROOFERS, DAMP AND WATERPROOF WORKERS ASSOCIATION and
Residential Reroofers, Local 30B, United Slate, Tile and
Composition Roofers, Damp and Waterproof Workers
Association, Appellants.
 Nos. 88-1508, 88-1620.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 2, 1988.
Decided March 23, 1989.
 
 Richard H. Markowitz (argued), Stephen C. Richman, Markowitz & Richman, Philadelphia, Pa., for appellants.
 Thomas H. Lee, II, Acting U.S. Atty., Walter S. Batty, Asst. U.S. Atty., Catherine Votaw (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellee.
 Before SEITZ, STAPLETON, and COWEN, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 Appellants Local 30, United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association and Residential Reroofers Local 30B, United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association ("the Roofers Union" or "appellants") appeal, at No. 88-1508, the district court's order granting the government's motion for a preliminary injunction. They also appeal, at No. 88-1620, the district court's order converting without objection the preliminary injunction into a final decree. The district court had jurisdiction under 28 U.S.C. Sec. 1331 and 18 U.S.C. Sec. 1964.
 
 
 2
 The appeal of the order granting a preliminary injunction, at No. 88-1508, is moot. Once the order granting the permanent injunction was entered, the order granting the preliminary injunction merged with it, and appeal is only proper from the order granting the permanent injunction. See Securities & Exchange Commission v. First Financial Group of Texas, 645 F.2d 429, 433 (5th Cir.1981). However, we have jurisdiction over No. 88-1620 under 28 U.S.C. Sec. 1291. The fact that the district court retained jurisdiction in this case to provide such further relief as might be necessary to effectuate the permanent injunction does not deprive the district court's order of its finality under Sec. 1291. See Securities & Exchange Commission v. Suter, 832 F.2d 988, 990 (7th Cir.1987).
 
 I.
 
 3
 This appeal was taken after lengthy civil proceedings in the district court brought by the United States against the Roofers Union and thirteen of its leaders under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Secs. 1961-1968 (RICO). The facts as found by the district court are set forth in great detail in the district court's opinion at 686 F.Supp. 1139 (E.D.Pa.1988) and are not challenged as clearly erroneous by the parties to this appeal.
 
 
 4
 The government's civil complaint, filed in December 1987, alleged that the thirteen individual defendants violated 18 U.S.C. Sec. 1962(c)[1] by conducting the affairs of the Roofers Union through a pattern of racketeering (Count One) and violated 18 U.S.C. Sec. 1962(d)[2] by conspiring to participate in and conduct the affairs of the Roofers Union through a pattern of racketeering (Count Two). The government prayed for preliminary and permanent injunctive relief in order to bar the individual defendants from participating in the affairs of the Roofers Union and to appoint a trustee pendente lite to discharge all duties of the Roofers Union's officers until an election of new officers could be held.
 
 
 5
 After conducting an evidentiary hearing, the district court granted in part the government's motion for a preliminary injunction. The district court denied the government's request for the appointment of a trustee pendente lite and to set aside the December 1987 election of new Roofers Union officers.[3] However, the district court enjoined the individual defendants from participating in the Union's affairs and from continuing to be employed in the construction industry within the Union's jurisdiction.
 
 
 6
 The district court also imposed a "decreeship" against the Roofers Union and appointed a "court liaison officer" as the principal enforcement officer of the decree. The decree provided, inter alia, (1) that the Roofers Union develop a grievance/arbitration procedure for resolving contractual disputes between the Union and employers, (2) that an audit of the Roofers Union and its affiliated entities[4] be conducted, (3) that the district court "establish direct control of all matters within the jurisdiction of the Union that require expenditure of any funds of the Union" or its affiliated entities, (4) that all face-to-face collective bargaining agreement negotiations between Union representatives and any other person take place under the supervision of the court liaison officer, and (5) that all Union records be made available to the court liaison officer.
 
 
 7
 After the district court converted the preliminary injunction into a "final decree," the Roofers Union timely filed a notice of appeal. The individual defendants did not appeal the district court's orders.
 
 II.
 
 8
 Appellants challenge both the district court's authority under 18 U.S.C. Sec. 1964(a) to enter the decree against the Roofers Union and the terms of the decree itself. In considering appellants' claims, we review the district court's grant of injunctive relief under the abuse of discretion standard. John F. Harkins Co. v. Waldinger Corp., 796 F.2d 657, 658 (3d Cir.1986). The district court's findings of fact are reviewed under the clearly erroneous standard, and its legal conclusions are subject to plenary review. See e.g., International Union, UAW v. Mack Trucks, Inc., 820 F.2d 91, 95 (3d Cir.1987).
 
 A. The Authority to Grant Injunctive Relief
 
 9
 We first address the district court's authority to impose the decree against the Roofers Union. 18 U.S.C. Sec. 1964(a) provides
 
 
 10
 The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.
 
 
 11
 In enacting Sec. 1964(a) Congress intended to give the district court expansive authority to remedy RICO violations. See United States v. Local 560 of the International Brotherhood of Teamsters, 780 F.2d 267, 295 (3d Cir.1985). As the House Report which accompanied the proposed RICO legislation states, "[Section 1964(a) ] contains broad provisions to allow for reform of corrupted organizations." H.R.Rep. No. 91-1549, 91st Cong., 2nd Sess. 2, reprinted in 1970 U.S.Code Cong. & Ad.News 4007, 4034. In addition, the Supreme Court has instructed that
 
 
 12
 RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach, but also of its express admonition that RICO is to "be liberally construed to effectuate its remedial purposes"
 
 
 13
 Sedima v. Imrex Co. Inc., 473 U.S. 479, 497-98, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (citations omitted). It is in light of the unambiguous language of Sec. 1964(a) and the admonitions to construe RICO's provisions broadly that we consider appellants' contentions regarding the district court's authority to impose a decree against the Roofers Union.
 
 
 14
 First, relying on Petro-Tech, Inc. v. Western Company of North America, 824 F.2d 1349 (3d Cir.1987), appellants argue that since the Union was found to be the underlying RICO enterprise, it is improperly named as a defendant in this action and cannot be liable for the acts of the individual defendants, who were found liable as the RICO "persons" under Sec. 1962(c). We view appellants' reliance on our decision in Petro-Tech as unavailing. In Petro-Tech we held that "a corporation which is alleged to be a RICO enterprise under 18 U.S.C. Sec. 1962(c) cannot be held vicariously liable for RICO violations committed by its employees if the employees are the 1962(c) persons named in the complaint as having conducted the affairs of the enterprise through a pattern of racketeering activity." Petro-Tech, 824 F.2d at 1351. We based our holding in Petro-Tech on the rationale that imposing liability on the Sec. 1962(c) enterprise would disrupt the intended operation of Sec. 1962(c) by making liable the victim of racketeering activity, namely the Sec. 1962(c) enterprise. Id. at 1359. See also Hirsch v. Enright Refining Co., 751 F.2d 628 (3d Cir.1984).
 
 
 15
 However, Petro-Tech, and the cases upon which it relied, involved claims for damages to third parties under 18 U.S.C. Sec. 1964(c) and did not entail subjecting the enterprise to an equitable remedy under Sec. 1964(a). See Petro-Tech v. Western Co. of North America, No. 85-308 Erie slip op. at 5 (W.D.Pa. May 29, 1986), aff'd in part, rev'd in part, Petro-Tech, 824 F.2d 1349 (3d Cir.1987); B.F. Hirsch v. Enright Refining Co., 577 F.Supp. 339 (D.N.J.1983), aff'd in part, vacated in part, B.F. Hirsch, 751 F.2d 628 (3d Cir.1984); Haroco v. American National Bank and Trust Co. of Chicago, 747 F.2d 384 (7th Cir.1984). Petro-Tech's concern that a corporation victimized by the racketeering activities of its own employees should not be liable, under Sec. 1964(c), for damages to third parties is not implicated here. This case raises instead the question whether the enterprise in a Sec. 1962(c) case may be subject to equitable injunctive relief under Sec. 1964(a) which is designed to aid, rather than punish or seek recovery from, the enterprise itself. Thus, because the purpose of the decree was to aid the Union, rather than to hold it liable, Petro-Tech is inapplicable.
 
 
 16
 Second, distinguishing Local 560, appellants argue that there is no basis for predicating broad injunctive relief against the Union in this case under 18 U.S.C. Sec. 1964(a) because, unlike Local 560, there was no finding of a violation of Sec. 1962(b)[5] or that any persons controlled the Union through violence, intimidation or extortion of the Union members' rights. In addition, they urge that, unlike Local 560, the Roofers Union is not a "captive labor organization" and that the members "do not need help or protection from the Court." Therefore, they contend, the district court did not have broad authority under Sec. 1964(a) to impose liability, restrictions or constraints upon the Union.
 
 
 17
 We find no merit to appellants' argument that the district court cannot impose injunctive relief against the Union because there is no Sec. 1962(b) liability in this case.
 
 
 18
 First, Sec. 1964(a) grants to the district court jurisdiction to restrain violations of Sec. 1962 in general. Second, Local 560 does not limit the reach of Sec. 1964(a) to situations which arise under Sec. 1962(b). In Local 560, this Court concluded that, by extorting the Union members' rights to democratic participation in the Union, an association of organized crime figures, the Provenzano Group, acquired control over and participated in conducting the affairs of Local 560, in violation of Secs. 1962(b) and (c), and conspired to commit these RICO offenses, in violation of Sec. 1962(d). This Court also concluded that members of Local 560's executive board violated Secs. 1962(b) and (d) by aiding and abetting the Provenzano Group.
 
 
 19
 Contrary to appellants' assertions, in Local 560 the Union was the enterprise for purposes of both Sec. 1962(b) and (c), and neither the Union nor its membership was found liable under either subsection. Yet, we affirmed the district court's imposition of a trusteeship upon the Union under Sec. 1964(a) because we concluded that the Union membership was being protected rather than punished by the trusteeship and because the power to appoint a trustee fell within the broad scope of Sec. 1964(a). Local 560, 780 F.2d at 296 n. 39. In Local 560, therefore, we upheld the district court's authority to subject the Union to injunctive relief even though the Union itself was not liable under either Sec. 1962(b) or Sec. 1962(c) and was only nominally a defendant in the case.[6]
 
 
 20
 We also find unpersuasive appellants' attempt to distinguish Local 560 on the fact that the RICO predicate acts in Local 560 were different from the predicate acts alleged and proved in this case. In Local 560, the predicate acts were the extortion of the members' rights to democratic participation in the Union. In this case, the predicate acts were the individual defendants' violent and corrupt practices which amounted to a pattern of racketeering. Appellants argue that "[b]ecause the individual defendants [in Local 560 ] controlled the Union as part of the RICO conspiracy, the Union became part of the racketeering activity," whereas in this case, "the Union itself is an innocent person ..."
 
 
 21
 However, appellants' argument is misplaced because the union in Local 560 was never held liable for racketeering. More important, RICO was intended to provide broad equitable relief under Sec. 1964(a) regardless of whether the union was acquired by racketeering activity under Sec. 1962(b) or had its affairs conducted by racketeering activity under Sec. 1962(c). The Senate Report states that[w]here an organization is acquired or run by defined racketeering methods, then the person involved can be legally separated from the organization, either by the criminal law approach ... or through a civil law approach of equitable relief broad enough to do all that is necessary to free the channels of commerce from all illicit activity.
 
 
 22
 S.Rep. No. 617, 91st Cong., 1st Sess. at 79 (1969). Based on the foregoing analysis, we conclude the district court did not err as a matter of law in imposing the decreeship upon the Roofers Union under Sec. 1964(a).
 
 B. The Scope of the Injunction
 
 23
 Since the district court was authorized by Sec. 1964(a) to impose a decree upon the Roofers Union, we must now consider whether the district court abused its discretion in crafting the particular terms of the decree.
 
 
 24
 Section 1964(a) "enables the district court, in its discretion, to employ a wide range of civil remedies." Local 560, 780 F.2d at 295. The district court is empowered not only to restrain but also to prevent future violations of Sec. 1962 by ordering reorganization or even dissolution of any enterprise, as long as the court makes due provision for the rights of innocent parties. Indeed, as the House Report attached to the RICO legislation states
 
 
 25
 Although certain remedies are set out, the list is not meant to be exhaustive, and the only limit on remedies is that they accomplish the aim set out of removing the corrupting influence and make due provision for the rights of innocent persons.
 
 
 26
 H.R.Rep. No. 1549, 91st Cong. 2nd Sess. 2, reprinted in 1970 U.S.Code Cong. & Ad.News 4007, 4034 (emphasis added).
 
 
 27
 Appellants contend that (1) the decree is not properly limited to effectuating the removal of the corrupt influence in the Roofers Union, namely, the thirteen individual defendants, (2) the imposition of the decree does not protect the rights of innocent persons, because the terms of the decree strip control of the Union from its members, and (3) the district court had no basis for finding that future violations were likely to occur once the thirteen individual defendants were removed from the Union. We will review these assertions seriatim.
 
 1. Removal of the Corrupt Influence
 
 28
 Appellants argue that the thirteen individual defendants were the only corrupt influence in the Roofers Union and that, therefore, the terms of the decree should have been limited to removing those individuals from the Union.
 
 
 29
 After reviewing the district court's uncontested findings, we conclude that appellants' contention is not supported by the facts of this case. The record supports the district court's finding that the removal of the thirteen individual defendants would not have eliminated the corrupt influence from the Roofers Union. The district court found as a matter of fact that the "evidence presented to this court ... established in a convincing and persuasive form that the racketeering activity of the individual defendants over the past twenty years extends far beyond that for which they have been charged, convicted and sentenced. Furthermore, the evidence establishe[d] the involvement of many more officers, members, agents and accomplices of the Roofers Union than have been convicted thus far."
 
 
 30
 In 1972, for example, Steven Traitz, Jr. (Traitz), one of the Union's leaders and one of the thirteen individual defendants named in the complaint, led 1,000 men, including many officers and members of the Roofers Union, in the destruction of an Altemose Construction Company (non-union) job site at Valley Forge, Pennsylvania. The men stormed the site and inflicted damage of approximately $300,000 to equipment and other property on the site. Eleven Union members were convicted of various crimes arising out of the Altemose incident and served prison terms. The Roofers Union used union funds to pay for the legal defense of these eleven members and to make annual payments during and after their periods of incarceration. The Roofers Union also paid for and installed at the Union Hall a plaque honoring the eleven convicted union members for their participation in the Altemose affair.
 
 
 31
 The facts of this case reveal a long history of violence and threats by the leaders and even some members of the Roofers Union, and support for such policies by many of the members themselves, continuing even after the conviction of the thirteen individual defendants. This condition would not easily be eliminated merely by the removal of those thirteen individuals. Under these facts, the district court did not err in finding that an injunction directed to only the thirteen defendants would not remove entirely the corruption which pervades the Roofers Union.
 
 2. Protection of Innocent Persons
 
 32
 Appellants also contend that the terms of the decree do not protect the rights of the innocent members of the Roofers Union. They urge that the decree, particularly its restrictions on the Union and the audit of the Union and its affiliated funds, deprives the membership of the right to govern itself.
 
 
 33
 We conclude the decree did protect the rights of innocent persons. First, the decree's financial restrictions and auditing requirements were reasonably tailored to protect the Union treasury from being used, as it had been in the past, for improper or illicit purposes. The district court found that the Roofers Union had paid $51,050 for legal fees associated with the defense of persons convicted in the Altemose incident, as well as salaries and benefits to the convicted Union members. The Roofers Union also paid a $650,000 settlement in connection with an attack by Union members on a non-Union contractor. Finally, the Roofers Union paid almost $1,000,000 in legal fees and bonds connected with the defense of its thirteen leaders, who were convicted of criminal RICO offenses in November 1987. The district court concluded, and appellants do not contest, that the use of Union funds to pay for the criminal defense of the Union's leaders, and related expenses, constituted illegal disbursements and was a breach of the Union leaders' fiduciary duty to the membership under 29 U.S.C. Sec. 501.
 
 
 34
 Second, rather than unreasonably interfering with the right of the Union membership to govern itself, the decree actually protects the membership's right of self-government. The district court found that many of the Union's members have an actual, legitimate and well-founded fear of attending meetings at the Meeting Hall, stemming from, inter alia: "(1) the undemocratic and brutal policies and practices of the former officers of the Union; (2) the perception that at least some of the corrupt former officers are still running the Union: (3) the failure of the newly elected officials and appointed business agents to repudiate the physically violent and otherwise coercive policies and practices of the Union's corrupt former officers; and (4) in some cases, the permanent physical and mental scars of outnumbered persons who suffered physical beatings at the hands of hired goons and trained boxers at the Union Hall."
 
 
 35
 Finally, the decree was tailored to minimize the impact on the Union's right to govern itself because the decree permits the newly elected Union leaders to remain in office; it does not provide for the more drastic remedy of dissolving the Union or placing it in trusteeship. Therefore, we conclude that the decree makes due provision for the rights of innocent persons, as required by Sec. 1964(a).
 
 3. The Likelihood of Future Violations
 
 36
 Appellants argue that the district court had no basis for concluding that future RICO violations were likely to occur once it removed the thirteen individual defendants from the Roofers Union. Under Sec. 1964(a) the district court is authorized to fashion appropriate equitable relief to prevent future violations of Sec. 1962. Whether such relief is appropriate under Sec. 1964(a) depends on whether there exists a likelihood that wrongful acts will be committed in the future. United States v. Cappetto, 502 F.2d 1351, 1358 (7th Cir.1974).
 
 
 37
 The likelihood of future wrongful acts is frequently established by inferences drawn from past conduct. Id. The district court found a significant likelihood of continued RICO violations, and the record supports this finding. The record is replete with evidence of past acts of violence and corruption perpetrated against both members and nonmembers of the Union. Indeed, the district court detailed hundreds of such acts in its opinion, which the appellants do not challenge.
 
 
 38
 Moreover, at least two of the thirteen individual defendants played a direct role in helping to elect new Union officials by threatening opposing candidates and their supporters. The facts further reveal that the newly elected officials are long time associates and allies of the thirteen individual defendants in this case, which indicates that corrupt influences continue to exist within the Union. We conclude on these facts that the district court properly found a likelihood of wrongful acts continuing into the future.
 
 
 39
 Accordingly, we conclude that the district court did not abuse its discretion in framing this particular decree under the authority granted by Sec. 1964(a).
 
 III.
 
 40
 For the foregoing reasons, we will affirm the permanent injunction order of the district court dated July 22, 1988. We will dismiss appeal No. 88-1508 as moot.
 
 
 
 [1]
 18 U.S.C. Sec. 1962(c) provides:
 It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
 
 
 [2]
 18 U.S.C. Sec. 1962(d) provides:
 It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b) or (c) of this section.
 
 
 [3]
 The December 1987 election was conducted to replace the same thirteen Union officers named in this civil RICO complaint, who had been convicted by a jury in November 1987 of a combination of 152 counts alleged in the related criminal RICO indictment. The thirteen convicted leaders would have been removed from Union office by operation of law under 29 U.S.C. Sec. 504 if the Roofers Union had not conducted an election to replace them with new officers
 
 
 [4]
 The district court found that the Roofers Union is associated with the following-federally regulated employee benefit plan funds: Local 30 Pension Fund, Local 30B Pension fund, Local 30 Health and Welfare Fund, Local 30B Health and Welfare Fund, Local 30 Pre-Paid Legal Services Fund, Local 30B Pre-Paid Legal Services Fund, Local 30 Vacation Fund and Local 30B Vacation Fund
 
 
 [5]
 18 U.S.C. Sec. 1962(b) provides:
 It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
 
 
 [6]
 The district court can bind a party to an injunction if that party is a nominal party in the action and has an opportunity to respond and object to the imposition of the injunction. See generally, O. Fiss and D. Rendleman, Injunctions at 1108 ff. (1984)