UNITED STATES of America, Plaintiff,

v.

LOCAL 560, INTERNATIONAL BROTH-
ERHOOD OF TEAMSTERS, CHAUF-
FEURS, WAREHOUSEMEN, AND
HELPERS OF AMERICA, et al., Defen-
dants.

Civ. A. No. 82–689.

United States District Court,
D. New Jersey.

Jan. 18, 1990.

Paul Stewart, Chief, Strike Force, Justice Dept., Newark, N.J., for plaintiff.

Bennet Zurofsky, Reitman, Parsonnet, Maisel & Duggan, Newark, N. J., for trustee Edwin H. Stier.

Paul A. Montalbano, Schneider, Cohen & Montalbano, Cranford, N.J., for defendants.

## OPINION

HAROLD A. ACKERMAN, District Judge.

Before me now are the fee applications of the court-appointed trustee, Edwin H. Stier, and counsel for the Trustee, the law firm of Reitman, Parsonnet, Maisel & Duggan.

## BACKGROUND

After finding that certain individuals connected with Local 560 violated provisions of the federal RICO law, I ordered Local 560 to be placed in a Trusteeship. *United States v. Local 560 of the Int'l Brotherhood of Teamsters*, 581 F.Supp. 279, 337 (D.N.J.1984), *aff'd*, 780 F.2d 267 (3d Cir. 1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986). I appointed Mr. Stier to serve as Local 560's Trustee on May 12, 1987. On November 28, 1988, I ordered that the trusteeship should continue beyond the December 6, 1988, the date of the first truly contested elections in Local 560. The order also provided that the Trustee would be compensated at the rate of $150 per hour for the hours that he served as Trustee, with all fees being paid by Local 560. The order further provided that the Trustee's retained counsel would be paid by Local 560.

After the parties filed various submissions to the court concerning the status of the trusteeship, I heard the parties' arguments with respect to the status of the trusteeship on October 13, 1989. At that hearing, I also afforded Mr. Montalbano, Local 560's counsel, the opportunity to present the views of the Local 560 executive board regarding the bills for fees which Mr. Stier and his counsel had submitted to the court. Heeding my invita-

tion, Mr. Montalbano first objected to the fact that the bills that the Trustee and his counsel provided to the Local were essentially "blind" bills—that is, the bills were not itemized and detailed due to the Trustee's and his counsel's concern that certain matters in the bills were sensitive and confidential in nature. In this regard, counsel for the Local was concerned about the Local having to pay charges for which it did not know the basis (Transcript of October 13, 1989 hearing, at 94 [hereinafter "hearing"]). Counsel's second objection was that the Local could not afford to pay the bills. In this regard, Mr. Montalbano argued:

> if you take a look at the financial records of the union, the union has been basically running even. They—and if you add these bills, it's going to push them far into the red. You're talking about roughly $50,000 right now. And when you add up how many members over what period of time they're required to pay that kind of money, it's a substantial burden on the union.

(hearing, at 98). Attempting to provide a solution to the payment problem, Mr. Montalbano proposed that since the time of the modified trusteeship (post-election trusteeship), the burden of payment should be shifted

> no longer upon the union but that it should be shifted to the general treasury of the government in regards to the work that they are doing, that we have already seen they have been cooperating with and meeting with the Justice Department.
>
> I see the tapes that we have seen, and there's been contact between them where, in essence, while they're doing the court's work, they're also doing the work or assisting the work of the Justice Department. And that Justice Department, as well as the Court, I mean, they're being paid by the general treasury, that's the Justice Department, the Court itself here is being paid by the general treasury.

    *     *     *     *     *     *

> [Payment] should come out of that source of monies because they are, in essence, doing the Court's work.

(hearing at 98–99). In response to this contention, the government stated that there was no authority or precedent for this shifting of fee liability to the government treasury (hearing, at 102).

With regard to the problem of billing detail, I directed the trustee and his counsel to provide the Local with detailed bills, which had been redacted to shield certain sensitive matters (hearing, at 96–97), so that the Local could better know what it was being billed for. As I understand it, the Trustee and his counsel provided those bills to the Local on or around November 15, 1989. On December 4, 1989, I notified all counsel of record that I would give the Local until December 15, 1989 to file any response to the redacted submissions. I have received nothing further from the Local.

## DISCUSSION

It appears that the Local has two objections to the fee applications: (1) the treasury of the United States should pay these bills and (2) they cannot afford to pay them. I will now deal with these objections.

### 1. SHIFTING FEE LIABILITY

■ I do not agree with Local 560 that the fee liability should be shifted to the general treasury. The federal RICO Act, 18 U.S.C. § 1964(a), states:

> The district courts of the United States shall have jurisdiction to prevent and restrain violations of sections 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any

enterprise, making due provisions for the rights of innocent persons.

The United States Court of Appeals for the Third Circuit has stated that this provision "enables the district court, in its discretion, to employ a wide range of civil remedies." *United States v. Local 560 of the Int'l Brotherhood of Teamsters,* 780 F.2d 267, 295 (3d Cir.1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2247, 90 L.Ed.2d 693 (1986); *accord United States v. Local 30, United Slate, Tile and Composition Roofers,* 871 F.2d 401, 407 (3d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 363, 107 L.Ed.2d 350 (1989). One of these wide-ranging remedies, which I imposed here, was to put in place a trusteeship to ensure that Local 560's members could fully exercise their democratic rights with respect to the Local's affairs. As the United States Court of Appeals for the Third Circuit indicated when they had the *Local 560* matter before them, " '[Section 1964(a)] contains broad provisions to allow for reform of corrupted organizations. Although certain remedies are set out, the list is not meant to be exhaustive, and the only limit on remedies is that they accomplish the aim set out of removing the corrupting influence and make due provision for the rights of innocent persons.' " 780 F.2d at 295 (*quoting* H.R.Rep. No. 91–1549, 91st Cong. 2d Sess. 2, *reprinted in* 1970 U.S.Code Cong. & Admin. News 4007, 4034). Restated, Congress has indicated that the court may fashion remedial orders necessary and proper to carrying out the purposes of the Act. Necessary and proper to the effective use of the trusteeship remedy is the payment of the trustee and his agents so that they may have financial incentive to proceed with the business of removing corrupt influences and protecting the rights of innocent people. In this regard, logic dictates that the Local should be charged with payment of the bill for the Trustee's and his counsel's fees. To hold otherwise

would create a strong disincentive to the filing of appropriate RICO suits, such as the one here, because potential plaintiffs would likely be less disposed to such filing if they knew that the financial burden of the remedy would essentially be charged to them.[1] Moreover, I am particularly convinced of the propriety of my ruling in the government's favor on this issue based on the United States Supreme Court's instruction regarding the interpretation of the RICO Act in *Sedima v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985). There, the Court stated that "RICO is to be read broadly. This is the lesson not only of Congress' self-consciously expansive language and overall approach, ... but also of its express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes,' Pub.L. 91–452, § 904(a), 84 Stat. 947." 105 S.Ct. at 3286, *quoted in Local 560,* 780 F.2d at 295. In comport with that broad reading and to effectuate RICO's remedial purpose, Local 560 is properly chargeable with the fees of the trustee and his counsel.

Local 560 has offered no statute, case, or any law which would lead me to a contrary determination. Apparently, Local 560 rests its argument that the federal treasury should pay the bill for the post-election trusteeship on the fact that the election signaled the end of the trusteeship as a fulltime monitor and enforcer of change in the Local and began a new period where the trusteeship became a parttime arm or agent of the Department of Justice.[2] Local 560 argues that since the Trusteeship does the Department of Justice's work, the general treasury of the United States should pay for the work that the Trustee and his authorized agents incur.

■ The Local's position is incorrect. The flaw in its position rests in its misperception of the December 6, 1988 elections. Those elections were an important step to-

---

1. Further, such a holding in the Local's favor on this issue would be anathema to the concept that a "remedy" imports relief of the harm caused by the unlawful conduct, not an exacerbation of that harm.

2. Although not clearly articulated, the Local has also apparently asked that the fees be paid out of the general treasury because the Trustee is an agent of the court, doing the court's work. I believe my reasoning applies to this opaque contention, as well.

wards the reestablishment of democratic trade unionism in Local 560. But as we see time and time again, a democratic election does not establish a democracy. As I noted in my November 28, 1988 letter to Mr. Stier adopting his report and recommendations for the modification of the Trusteeship, much of the antidemocratic, racketeering force had been removed from the Local, *but* it remained to be seen whether a total democratic trade union had been achieved. Imbedded in this language and the substance of my order was the realization that more work remained for the Trustee and his agents, now as an aid to the nascent executive board, to reach the goals for which I had imposed the trusteeship, the goals of RICO—that is, in this case, a Local whose cup is empty of corruption and racketeering and is instead brimming with trade-union democracy. Therefore, as the Trustee's, and his counsel's, work was conducted in furtherance of implementing the RICO remedy, their fees are chargeable to Local 560.[3]

## 2. LOCAL 560'S ABILITY TO PAY THE FEES

The following amounts accurately reflect the fees that the Trustee has incurred since the December 6, 1988 election:

| MONTH | HOURS | AMOUNT ($) |
|---|---|---|
| December, 1988 | 37.15 | 7,044.19 |
| January, 1989 | 53.05 | 7,957.50 |
| February | 21.90 | 3,285.00 |
| March | 17.35 | 2,602.50 |
| April | 27.75 | 4,162.50 |
| May | 6.25 | 937.50 |
| June | 19.50 | 3,722.00 |
| July | 13.25 | 2,026.00 |
| August | 6.50 | 979.00 |
| September | 12.15 | 1,822.50 |
| October | 14.25 | 2,144.50 |
| | 229.10 | 36,683.19 |

The following amounts accurately reflect the fees that the Trustees' counsel has incurred since the December 6, 1988 election:

| MONTH | HOURS | AMOUNT ($) |
|---|---|---|
| Dec. 8, 1988 to Jan. 15, 1989 | 33.75 | 3,375.00 |
| Jan. 17 to Feb. 10 | 26.50 | 2,918.00 |
| Feb. 16 to March 15 | 12.50 | 1,250.00 |
| Mar. 16 to April 15 | 22.75 | 2,275.00 |

| MONTH | HOURS | AMOUNT ($) |
|---|---|---|
| April 17 to May 19 | 15.50 | 1,550.00 |
| May 16 to June 15 | 12.75 | 1,275.00 |
| June 16 to July 15 | 12.00 | 1,200.00 |
| July 16 to Aug. 15 | 12.75 | 1,275.00 |
| Aug. 16 to Sept. 15 | 5.00 | 500.00 |
| Sept. 16 to Oct. 15 | 11.50 | 1,150.00 |
| Oct. 16 to Nov. 15 | 8.75 | 875.00 |
| | 173.75 | 17,643.00 |

The Local has stated that it simply cannot afford to pay these bills (hearing, at 98), for paying such bills would "push them far into the red" (id.). However, the Local has put forth no specific evidence of the state of its finances to indicate that it could not withstand the payment of such fees. Moreover, I note that the extent of the billings are in reality controlled by the Local's own actions. If the pace of democratic reform in the Local was accelerated, then the need for the services of the Trustee and his counsel would significantly decrease, and, consequently, so would the amounts contained in the billings.

Related to the Local's argument that they cannot pay the bills because that would push them into "the red" is its argument that the Mr. Stier's hourly rate is excessive. In this regard, the Local submits that when Mr. Stier was a preelection Trustee (essentially fulltime at the Local's office), he was compensated at a rate of $293.40 per business day. Now, the Local submits, the Trustee is to receive $150 per hour under my November 28, 1988 order. The Local does not believe that such a new rate is fair and reasonable.

██ I do not agree with the Local's assessment of the reasonableness of the Trustee's and his counsel's fees. I have carefully reviewed the fee application of both the trustee and his counsel. I find that the amounts charged are reasonable fees for necessary services—that is, work executed to promote the Local's move towards democracy and away from the rampant corruption and racketeering which had plagued the Local for decades. *See, e.g., United States v. Local 30,* Civ. A. No. 87–7718, slip op. (E.D.Pa. Feb 15, 1989) (unpublished; available on WESTLAW,

---

**3.** I also note that under sovereign-immunity principles, *see, e.g., Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986); *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941), the government treasury would not be chargeable with such fees.

1989 WL 11727) (Bechtle, J.) (awarding fees in trusteeship setting where work was necessary and amount was reasonable), *aff'd mem.*, 882 F.2d 512 (3d Cir.1989). The Trustee and his counsel have carried out their tasks with unparalleled competence, further indication that they are entitled to the amounts articulated above.

Further, I believe Mr. Stier when he states that he tried his best to curtail his number of billable hours and that he worked many more hours in connection with Local 560 matters than he actually billed (hearing, at 106). I know this to be so because I have seen the results of the excellent work that the Trustee has done and, in inverse proportion, the minimal amount of time that he has charged to the Local 560 matter.

Let me also state that, if anything, the trustee's and counsel's hourly rates have been seriously undervalued. Back on December 17, 1987, the New Jersey Law Journal reported that attorneys of the Trustee's and his counsel's caliber in New Jersey were commanding an average hourly rate of $182.00. I do not believe that those figures have decreased since 1987.

I also note that Local 560 initially had some question over certain billing entries, but seemed to have cleared them up with the trustee and counsel. Judging from the lack of any more specific objections by Local 560 to the line items in the redacted billings, however, I believe that the record reflects no item-specific disputes. I also believe that the record reflects that this court has given the Local every opportunity to lodge objections to the fees, both in writing and orally at the October 13th hearing. *See, e.g., Local 30, supra,* slip op. (parties given adequate opportunities to lodge objections to fee applications).

In sum then, I conclude that the Local can pay these bills and that the fees were reasonable and necessary. I also note, before concluding, that the Trustee and his counsel have been waiting a long time for the payment of their fees. In this regard, the Local shall pay these fees within 30 days of the date of the filing of the order accompanying this opinion.

## CONCLUSION

For the reasons articulated above, I will order Local 560, within 30 days of the date of the filing of the order accompanying this opinion, to pay the Trustee the amount of $36,683.19 and to pay the Trustee's counsel the amount of $17,643.00 as the reasonable fees for their services rendered in furtherance of the Trusteeship which this court imposed. An appropriate order accompanies this opinion.