UNITED STATES of America

v.

**LOCAL 30, UNITED SLATE, TILE AND COMPOSITION ROOFERS, DAMP AND WATERPROOF WORKERS ASSOCIATION, et al.**

Civ. A. No. 87–7718.

United States District Court,
E.D. Pennsylvania.

June 24, 1993.

Edward S.G. Dennis, Jr., U.S. Atty., James G. Sheehan, Asst. U.S. Atty., Chief, Civil Div., Catherine Votaw, Asst. U.S. Atty., David F. McComb, Asst. U.S. Atty., for U.S.

Robert E. Welsh, Jr., for Court Liaison Officer.

Edward J. Daly, Philadelphia, PA, for Michael Daly.

Ronald F. Kidd, Teresa N. Cavenagh, Duane Morris & Heckscher, Philadelphia, PA, for E. Hurst, M. Mangini, R. Crosley, M. Daly, D. Cannon, M. Osborn, R. Medina, E. Williams, J. Nuzzi, R. Schoenberger.

Richard H. Markowitz, Stephen C. Richman, Markowitz & Richman, Philadelphia, PA, for Local 30/30B, United Slate, Tile & Composition Roofers, Damp & Waterproof Workers.

## MEMORANDUM ORDER

BECHTLE, District Judge.

AND NOW, TO WIT, this 24th day of June, 1993, upon consideration of defendant Joseph Traitz's ("Traitz") application for clarification of the court's May 23, 1988 decree 686 F.Supp. 1139 ("decree") imposed on Roofers Local 30/30B ("Local 30/30B" or "union"), IT IS ORDERED that the application to clarify the May 23, 1988 decree to permit Traitz's employment with National ECO Systems, Inc., is *denied.*

In his application, Traitz seeks a clarification of the court's decree that would permit him to continue with his employment with National ECO Systems, Inc. ("NES"), a family-owned business. In ruling on Traitz's application, the court must decide whether Traitz's continued employment with NES is in violation of the decree's ban on employment in the "roofing or related construction industries." For the reasons stated below, the court finds that Traitz's employment with NES is a violation of the May 23, 1988 decree.

### Background

On May 23, 1988, the court entered a comprehensive decree in the above-captioned civil RICO action, granting relief by imposing a "decreeship" upon Local 30/30B, a union that had a long history of abuse, corruption and violence. (Decree at ¶ 4.) In addition, and more particularly related to the application presently before the court, the decree also imposed employment limitations on the individual defendants (former officers and/or employees of the union) who had been convicted of wrongdoing. The decree's restrictions barred the named individuals from participating in the management or operation of the union, or any affiliated entity, as well as placed limitations on other related employment opportunities.

The court need not address in depth the factors upon which it relied in imposing both the "decreeship" and the prohibitions upon the individual defendants. *See United States v. Roofers Local 30/30B, et al.,* 871 F.2d 401 (3d Cir.1989); *United States v. Roofers Local 30/30B,* 686 F.Supp. 1139 (E.D.Pa.1988). Essentially, the court found that the individual defendants were responsible for a pattern of racketeering activity through which the affairs of Local 30/30B were conducted. Accordingly, the court placed the various restrictions upon the individual defendants and their employment opportunities so as to prevent continued or future racketeering activity within the operation of Local 30/30B.

### Discussion

Traitz's application is directed at one aspect of the court's decree, that is, the following prohibition on employment:

Each of the individual defendants is, until further Order of court, prohibited from engaging in employment in the *roofing or related construction industries, in any capacity,* within the geographical area of the jurisdiction of Local 30/30B as that jurisdiction existed on the day these civil proceedings were filed. The court will consider allowing employment in the roofing or related construction industries within the

jurisdictional area in a non-supervisory or non-leadership role upon application to the court of any affected defendant.

(Decree at ¶ 7 (emphasis added).)

Traitz asserts in his application that NES "solely hauls away trash and debris," and states that NES has "approximately six employees, three vehicles, and is managed, owned and primarily controlled by" his mother, Barbara Traitz. (Application at ¶¶ 4–5.) In support of the application, Barbara Traitz asserts in an affidavit that Traitz's "role in the company was that of a sales person soliciting new non-roofing contracting work involving demolition debris removal." (Affidavit at ¶ 5.) Ms. Traitz states that her son simply functions as what might be called a salesman, bringing in new work to the company of a non-roofing nature, and that, thereafter, other employees handle the accounts. (Affidavit at ¶ 7.) Ms. Traitz sets forth that, in the past and at the time of the execution of the affidavit, NES has done business with ten roofing companies, all of which were served by another employee. (Affidavit at ¶¶ 12–13.) Finally, Ms. Traitz asserts that Traitz "has absolutely no contact with any of the roofing customers in any manner whatsoever" and that he "is solely a salesperson for new, non-roofing customers." (Affidavit at ¶ 14.)

In deciding Traitz's application, the court will assume the accuracy of the facts recited in Ms. Traitz's affidavit concerning the conduct of the business affairs of NES. Upon consideration of the averments made in Traitz's application and Ms. Traitz's affidavit, the court must deny the application.

The court's decree barred the individual defendants, including Joseph Traitz, from working in the "roofing or related construction industries, in any capacity, within the geographical area of jurisdiction of Local 30/30B." (Decree at ¶ 7.) This employment restriction reflects the court's concern that the individual defendants possess the capability of continuing their past pattern of racketeering activity should they be permitted to be employed in related construction indus-

tries.[1] To the extent that Traitz's activities as an employee of NES involve employment in the "roofing or related construction industries," his employment is in violation of the decree. This employment is prohibited "in any capacity," including solicitation and sales activities within the roofing or related construction industries.

At the very least, Ms. Traitz's affidavit demonstrates that some of Traitz's sales activities involve the construction industries. (Affidavit at ¶¶ 5, 9 and 15.) Paragraph 9 of the affidavit states that Joseph Traitz solicited Wyatt Construction Company, Nealson Construction and Painters Local 641. The court believes that the phrase "roofing or related construction industries, in any capacity" gives clear and unambiguous notice as to the kind of employment which is prohibited. Traitz's sales activity plainly constitutes work in the construction industry and, accordingly, is prohibited by the decree. Accordingly, the application is *denied* to the extent it seeks clarification of the May 23, 1988 decree to include Traitz's employment with NES.

Traitz's request for leave of court to work in the roofing or related construction industries, in accordance with the application procedure described in paragraph 7 of the May 23, 1988 decree, is, therefore, *denied*. The work proposed by Traitz is particularly fraught with opportunity for unlawful influence, and the possibility of continued influence in the affairs of Local 30/30B and the roofing industry. This conclusion is clear, based upon the following factors. First, NES appears to be run primarily by the Traitz family. Reference to the trial record and the memorandum and decree of May 23, 1988 demonstrates that, to a significant extent, members of the Traitz family were among the very core of those who operated the racketeer-influenced entity as the court found it to exist. Stephen Traitz, Jr., his two sons (Joseph Traitz and Stephen Traitz, III), and his son-in-law (Richard Schoenberger) were at the very heart of the unlawful operation of Local 30/30B. As the court noted, the very perception alone of continued influence

---

1. There is no dispute that the affairs of NES are conducted within the geographical boundaries of Roofers Local 30/30B.

is to be avoided. *See Roofers Local 30/30B,* 686 F.Supp. at 1162.

Second, the court held that the "convicted defendants must be barred from the roofing industry within the jurisdiction of Local 30/30B, pending their appeals *and possibly after service of their sentences,* to sever their influence on the Union, formal and informal, to create the perception among the membership and the industry that their influence and practices have been terminated, and to avoid undermining the actions of the Decreeship." *Id.* at 1163 (emphasis added).

Even the role of a "salesman" in the context suggested by Traitz is troublesome. Presumably, Traitz would act as a spokesman for the company, its sole representative in particular transactions. In that role, Traitz would not only be bargaining, negotiating and soliciting work, but also resolving customer complaints and making adjustments to sales contracts and work orders. In a salesman's position, Traitz would clearly be given authority to cause his company to act, or not to act, to perform in a particular manner, or to render service. This is the precise role, albeit a different product, that led to the defendant's ultimate downfall, and to the injury suffered by the roofing industry in the period preceding the 1988 decree.

Traitz's current and proposed continued employment with NES places him in a position where there will likely be a perception, and perhaps a reality, of corrupt influence in the construction industry as a whole, and the conduct of the affairs of certain companies in particular. Accordingly, as the court finds Traitz's employment with NES to be in violation of the May 23, 1988 decree, the application to clarify the May 23, 1988 decree so as to permit his employment with NES is *denied.*